RENDERED: SEPTEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1040-MR

DEBORAH OSTAFI AND ROBERT OSTAFI        APPELLANTS

v.      APPEAL FROM GALLATIN CIRCUIT COURT
HONORABLE JAMES R. SCHRAND, JUDGE
ACTION NO. 18-CI-00074

GARY GABBARD AND JODIE GABBARD        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND K. THOMPSON, JUDGES.

CALDWELL, JUDGE: Deborah and Robert Ostafi appeal from a Gallatin Circuit Court judgment on a jury verdict regarding trespass and malicious prosecutions claims arising from their disputes with neighboring landowners Gary and Jodie Gabbard. We affirm.

# FACTS AND PROCEDURAL HISTORY

The Ostafis and the Gabbards own adjoining waterfront properties in Gallatin County. The Gabbards placed a manufactured or mobile home on their property. The Ostafis claimed that the home was placed in a manner violating setback and other requirements in local zoning rules, invading their privacy and creating a nuisance.

In fall 2016, Deborah Ostafi ("Deborah") planted several evergreen trees near the boundary between the Ostafis' and the Gabbards' properties. Shortly afterward, she requested that a surveyor mark the boundary between the two properties. She found out that some of the newly planted trees were actually on the Gabbards' property.

Gary Gabbard ("Gary") contacted the Ostafis several times over the next several months, asking them to move trees from the Gabbards' property. He said his wife, Jodie Gabbard ("Jodie"), did not want them there. In July 2017, the Ostafis saw that some of the trees which Deborah planted had been removed. However, the Ostafis did not actually witness anyone removing the trees.

Deborah reported the trees' removal to the sheriff. According to the sheriff's written report, Deborah contacted the sheriff about someone stealing trees she planted on the property line and Deborah thought Gary was responsible for the

trees' disappearance. The report states there were holes in the ground where something had been planted close to the property line.

Deborah next consulted the County Attorney. The County Attorney set up a mediation between the Ostafis and Gabbards in late July 2017 to try to resolve their disputes. The mediation was unsuccessful.

At some point, some stakes marking the property line boundary had been removed or disappeared. The Ostafis spent about $1,000 for a private surveyor to re-survey and re-mark the boundary lines. Also, the Ostafis believed that some of their trees on their property appeared to be poisoned. And they perceived their underground dog fence was damaged by the Gabbards' construction of a seawall – in which stones were placed on the Ostafis' property and then later removed.

Deborah signed a criminal complaint in late August 2017 against Gary which the County Attorney prepared after consulting with her. She averred that Gary had "unlawfully removed trees that been planted by affiant; unlawfully poisoned tree or trees planted by affiant, unlawfully placed new double wide mobile home within 6 feet of the property line in violation of the local planning and zoning sideline set back of 10 feet. . . ." (Plaintiff's Trial Exhibit 3 in Record on Appeal). Deborah also averred that Gary had unlawfully removed survey stakes marking the property line, in violation of Kentucky Revised Statutes (KRS)

433.770,[1] and that it cost her $1,000 to have the property line re-surveyed and re-marked.

The County Attorney filed proceedings against Gary in district court, alleging *inter alia* that Gary willfully removed and/or damaged boundary markers and committed third-degree criminal mischief.[2] Gary obtained representation of counsel for the district court proceeding.

Several months after the criminal charges were filed, Gary, through counsel, filed a motion to dismiss the criminal charges. In this motion, he stated "[t]he Commonwealth and Defendant [Gary] have agreed that the felony case for removal of the boundary marker would be pursued as a misdemeanor and

_____

[1] KRS 433.770 (titled as "**Willfully removing or damaging boundary marker**") provides:

> (1) Any person who fraudulently and willfully removes, defaces, cuts down, or destroys a cornertree, post, cornerstone, or any monument erected to designate the boundary of this state, or of any county or city, or the boundary of any tract or lot of land, shall be guilty of a Class D felony and shall cause the marker, at his or her own expense, to be reestablished by a professional land surveyor.

> (2) Any person who willfully and knowingly, but without a felonious intent, removes, defaces, cuts down, or destroys a tree, post, stone, or any monument erected to designate the boundaries of this state or of any county or city, or the boundaries of any tract or lot of land, shall cause the marker, at his or her own expense, to be reestablished by a professional land surveyor.

[2] Willfully and fraudulently removing a boundary marker is a Class D felony. KRS 433.770(1). Third-degree criminal mischief is a Class B misdemeanor. KRS 512.040(2). The complaint filed in district court also alleged violation of local zoning ordinances.

-4-

recognize a civil remedy is available under KRS 433.770(2)." He requested that the district court dismiss the criminal case for the dispute to be resolved as a civil matter. The district court entered an order granting the motion to dismiss, stating that the case was civil rather than criminal on docket notations.

After the criminal case against Gary was dismissed, the Ostafis filed a civil complaint against the Gabbards in Gallatin Circuit Court. They asserted claims including trespass and violation of zoning laws. The Gabbards answered and asserted counterclaims including trespass against the Ostafis. Gary also asserted a counterclaim for malicious prosecution against Deborah.

The case proceeded to a jury trial. The sheriff testified that Deborah had contacted him to file a police report after noticing the removal of the trees and that she suspected Gary was involved based on his communications with her and her family. But he did not remember her saying that she had actually seen someone remove the trees. He also testified that Deborah did not tell him that the trees removed had actually been planted on the Gabbards' property. He testified about wanting to verify where the property lines were, but he found that some markers were missing when he went to the scene.

Similarly, the County Attorney testified that Deborah consulted him about such problems as the missing trees and an apparently poisoned tree. He also did not remember her saying she actually witnessed removal of trees or survey

markers, or the poisoning of trees. He testified to taking her at her word and drawing up the complaint based on what she told him. He testified she had not expressed a desire to have Gary convicted of a particular crime or thrown in jail but simply sought his help in finding a solution to her problems.

Gary testified to telling the Ostafis that Jodie did not want the trees on their property on several occasions, but that the Ostafis really did not respond to his statements. He also testified to telling his wife to remove stones from the Ostafis' property when he became aware that the Ostafis were not happy about his building a seawall and that the Gabbards' contractor had placed stones on the Ostafis' property when building the seawall.

Jodie admitted in trial testimony that she had actually removed the trees at issue. She testified that she had told an adult relative of the Ostafis, in July 2017, that the trees on the Gabbards' property needed to be removed within seven days. And she testified that when the trees remained on the Gabbards' property ten days later, she then removed the trees and threw them away in the bog. She also testified that she had made a video on her phone to show that the removed trees had been located within the Gabbards' property as shown by the markers, which were still there at the time. She also admitted that she had gone on to the Ostafis' property to remove some stones left there from construction of the Gabbards'

seawall at Gary's direction after Gary discovered that the contractor had left stones on the Ostafis' property.

During trial, Deborah moved for a directed verdict on the malicious prosecution claim arguing there was no evidence of her lacking probable cause or acting with malice. The trial court denied her directed verdict motion. The Ostafis also moved for a mistrial, based on allegations of witness tampering by the Gabbards' attorney. The trial court reserved the mistrial motion, allowing the parties to brief the issue following trial. The Ostafis' counsel also noted an objection to the trial court's instruction on malicious prosecution.

The jury found that Jodie had intentionally trespassed on the Ostafis' property, but it awarded $0 in damages for that trespass. Otherwise, the jury found against the Ostafis on all the claims the Ostafis asserted.[3]

On the Gabbards' counterclaims, the jury found that Deborah and/or Robert Ostafi had intentionally trespassed on the Gabbards' land and awarded $75 in damages for this trespass. It also found for Gary Gabbard on his counterclaim against Deborah Ostafi for malicious prosecution and it awarded $4,500 in damages for the malicious prosecution.

---

[3] The trial court did not instruct the jury about the zoning violations alleged in the Ostafis' complaint as it concluded there was no private right of action for such violations. No issues about this conclusion have been raised on appeal. The local zoning enforcement board declined to take any further actions regarding alleged zoning violations until this civil lawsuit was resolved.

The trial court entered judgment in accordance with the jury's verdict and awarded the Gabbards court costs as the prevailing party. Its original trial order and judgment was corrected on motion to reflect that the malicious prosecution claim concerned only Gary as the plaintiff and Deborah as the defendant. Thus, the judgment on appeal is styled as an amended trial order and judgment. Following the resolution of various post-trial motions, the Ostafis filed a timely appeal. Further facts will be provided as necessary as we analyze issues raised on appeal.

## ANALYSIS

Before addressing the specific issues raised on appeal, we note that an appellant's brief must contain "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(v). The Argument portion of the Appellants' brief filed by the Ostafis begins with a very general preservation statement that: "All errors discussed below were preserved in the motions and objections of the parties." Unfortunately, this preservation statement is not helpful to this Court in identifying if or how any specific issue raised on appeal was presented to the trial court and therefore preserved for appeal.

Fortunately, we can discern from the more specific discussion of **some** issues in the Ostafis' brief how such issues were presented to the trial court and preserved for review in the record on appeal. But to the extent that the Ostafis have failed to identify how any particular issue was preserved for our review, this Court has the discretion to strike portions of the brief or to review only for manifest injustice. *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). Furthermore, any inadequately preserved issue may be reviewed only for palpable error under CR 61.02[4] rather than under otherwise applicable standards of review for that issue. With this caveat in mind, we assess whether each error alleged by the Ostafis amounted to reversible error.

### No Reversible Error in Denial of Motion for Mistrial

The Ostafis' first claim of error is that the trial court abused its discretion in denying their motion for a mistrial. Clearly, this issue is preserved for review in light of their filing a motion for a mistrial. The Ostafis' counsel orally moved for a mistrial before the conclusion of trial, with the trial court reserving the issue and allowing the parties to brief it after trial.

---

[4] CR 61.02 provides: "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

We review the trial court's denial of the motion for mistrial under an abuse of discretion standard of review. *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 741 (Ky. 1996) ("The trial court's decisions to overrule the motions for mistrial and a new trial cannot be disturbed absent an abuse of discretion. . . .").

As the basis for their mistrial motion, the Ostafis alleged that the Gabbards' counsel had engaged in witness tampering. Specifically, they alleged that the Gabbards' counsel advised two witnesses not to appear when the Ostafis' counsel subpoenaed the witnesses to produce documents. They pointed to an email by the Gabbards' counsel stating "I am notifying our two expert witnesses specifically not to appear. . . ." The Ostafis alleged they did not receive the subpoenaed records as a result.

The Ostafis also claimed that the Gabbards' counsel had contacted their witness, Paul Norris, in a way which Norris perceived as threatening. According to the Ostafis, Norris asked the Ostafis' counsel to draft an affidavit concerning the allegedly threatening phone call but then declined to sign the affidavit and testified in a manner inconsistent with the proposed affidavit.

The unsigned affidavit indicated that the Gabbards' counsel attempted to use a prior attorney-client relationship with Norris to her advantage, that the Gabbards' counsel advised Norris (who lived in Alabama) that the out-of-state subpoena was defective, and that she preferred him not to attend. And the

-10-

unsigned affidavit also stated that "when he refused to acquiesce, [the Gabbards'] counsel stated that the next telephone call Mr. Norris should expect to receive would be from John Wright, Gallatin County Prosecutor which he [Norris] perceived as a threat." In another affidavit that was signed, the Ostafis' counsel averred that Norris called to say he was worried about what would happen if he signed the affidavit prepared for him but Norris would be happy to testify about the truth of the contents of the prepared, unsigned affidavit.

At trial, Norris testified that the Gabbards' counsel called him about a month before trial, that she indirectly asked him not to appear, and that the Gallatin County Attorney's name came up in their conversation but he did not remember why he should call the County Attorney or why the County Attorney should call him. The Ostafis point out that the Gabbards' counsel did not ask Norris about the phone call in cross-examination after he testified about her telling him indirectly not to come to trial during direct examination. But as the Gabbards point out, the Ostafis' counsel also did not follow up further through additional inquiry on re-direct.

The Gabbards filed a response to the Ostafis' mistrial motion, attaching a further email from their counsel sent to the Ostafis' counsel in which the Gabbards' counsel explained that she had misspoken when telling the Ostafis' counsel that she told the expert witnesses not to appear in an earlier email. Instead,

she said "I told my expert witnesses to appear but not to give you the documents you requested until I was present, and the Court had ruled on the motion" to quash the subpoena. (The Gabbards' motion to quash the subpoena *duces tecum* was granted by the trial court prior to trial.)

The Gabbards also attached to their response supporting affidavits from their counsel and from another attorney who had overheard their counsel's discussion with Norris. The Gabbards' counsel averred that she did not tell Norris he did not have to appear. Instead, she averred that, during a four-minute conversation, she asked Norris what he knew about the case and he replied "nothing" and denied having any direct knowledge about what happened but had only heard things about the neighbors' disputes. She also averred that Norris complained about having to travel several hundred miles to appear at trial and that she advised him she was not his attorney and could not give him advice, but she suggested that he consult an attorney. When Norris asked what any Alabama attorneys might know, she asked if he knew any attorneys in Gallatin County (Kentucky) and he said he knew two attorneys including "Spike" Wright (the Gallatin County Attorney). So, counsel suggested he call one of the attorneys he knew about his subpoena questions. She concluded her affidavit by averring that her notes about the conversation with Norris read: "He doesn't know anything or why he was subpoenaed."

The other attorney who overheard the conversation averred that the Gabbards' counsel told Norris she was not his attorney and that Norris should consult an attorney of his own choosing about any questions about the subpoena. He also averred that the Gabbards' counsel did not tell Norris he did not have to appear at trial pursuant to the subpoena.

The Ostafis' counsel also filed his own affidavit in response and that of a paralegal in his office who overheard a phone call with Norris. The Ostafis' counsel averred that Norris called the Ostafis' counsel about a month prior to trial to tell him that Norris received a phone call from the Gabbards' counsel. He further averred that Norris requested he prepare an affidavit about this.

The Ostafis' counsel and the paralegal also averred that about two weeks after the first phone call, Norris called again to say he was worried about signing an affidavit but would voluntarily testify for the Ostafis. The affidavits also stated that Norris felt the Gabbards' counsel used a prior attorney-client relationship with him to her advantage and that Norris reported telling the Gabbards' counsel she was acting unethically. The affidavits recount Norris' saying that the Gabbards' counsel advised him that the subpoena was defective, and she preferred he not appear and "that the next telephone call he should expect to receive would be from John Wright, Gallatin County Prosecutor."

In its order denying the mistrial motion, the trial court cited authority indicating that mistrial is an extreme remedy and should only be granted "when there is a fundamental defect in the proceedings which will result in a manifest injustice" such that a party is deprived of a fair and impartial trial "and the prejudicial effect can be removed in no other way." (Record on Appeal (R.), p. 1487) (quoting *Gould*, 929 S.W.2d at 738). The trial court then determined that a mistrial was not merited, explaining that:

> The Court finds that the conduct alleged by Plaintiffs [the Ostafis] did not result in a fundamental defect that resulted in a manifest injustice to Plaintiffs. In reviewing the correspondence between counsel, Attorney Baxter [counsel for the Gabbards] expressed concern not only that Attorney Axon [counsel for the Ostafis] had issued the subpoenas without giving her notice but also that she had identified the witnesses as experts. Attorney Baxter informed Attorney Axon that she did not tell the witnesses not to appear, but asked that they not provide any documents until the Court ruled on her Motion to Quash the Subpoenas. Additionally, the Court cannot find that the telephone call from Attorney Baxter to Mr. Norris caused him to change his opinions. Also, as argued by Defendants [the Gabbards], some of these opinions may have been properly objected to.[5]

> Considering the affidavits of the Gabbards' counsel and the other

attorney who overheard her conversation with Norris, Norris's trial testimony, and

---

[5] Apparently the Ostafis wished to call Norris to testify about his perceptions of the Gabbards' character, but the Gabbards argued that such character evidence was not relevant to properly determining issues in controversy.

the affidavit prepared by the Ostafis' counsel never actually being signed by Norris, we conclude that the trial court did not abuse its discretion in denying the mistrial motion despite any conflicts with the affidavits of the Ostafis' counsel and his paralegal.

In addition to unsuccessfully claiming that the trial court should have granted a mistrial for alleged misconduct by the Gabbards' counsel, the Ostafis claim other errors by the trial court. Although not specifically alleging errors about the resolution of trespass or other claims, they appear to focus on challenging the validity of the trial court's judgment on the jury verdict on malicious prosecution.

Following their mistrial argument, the Ostafis claim that the trial court's amended trial order and judgment is "clearly erroneous" focusing on alleged errors concerning the malicious prosecution claim, especially probable cause or lack thereof. Despite the heading more generally alleging error in the amended trial order and judgment, this section of their brief appears to specifically allege error in the trial court's jury instructions and/or in the sufficiency of the evidence to support the malicious prosecution claim. We address each issue in turn.

**Any Error in Content of Malicious Prosecution Jury Instruction About Probable Cause Not Properly Preserved and Not Subject to Appellate Review**

As stated by the Kentucky Supreme Court: "a trial court's decision on whether to instruct on a specific claim will be reviewed for abuse of discretion; the substantive content of the jury instructions will be reviewed *de novo*." *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015). CR 51(3) explicitly sets forth how alleged errors in jury instructions must be specifically presented to the trial court for such errors to be properly preserved:

> No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating **specifically** the matter to which he objects and the ground or grounds of his objection.

(Emphasis added.) And as the Kentucky Supreme Court has recently stated: "if a party fails to preserve properly a challenge to jury instructions in the trial court, the challenge is not entitled to appellate review." *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 709-10 (Ky. 2020).

To the extent that the Ostafis argue that the contents of the trial court's jury instruction on malicious prosecution incorrectly stated the law concerning probable cause or lack thereof, we conclude that this challenge was not properly preserved for review and thus the Ostafis are not entitled to appellate

review on this argument. *Id.* So, we need not review the contents of the malicious prosecution instruction regarding probable cause or lack thereof.

As the Gabbards point out, the Ostafis' brief does not specifically point out how any error in the trial court's jury instruction was preserved for review. And neither party has directed our attention to any portion of the record in which they tendered proposed written jury instructions.

In the Ostafis' reply brief at page 2, they cite to a portion of the trial recording in which their counsel orally noted an objection to Instruction No. 9 – the malicious prosecution instruction. Video Record (VR) 12/4/2019 2:51:56- 2:52:02. But we heard no specific discussion of how to address probable cause in the malicious prosecution instruction in this cited portion of the recording – despite the argument in their appellate briefs that the trial court erred in the contents of its malicious prosecution instruction regarding probable cause, and/or erred in submitting the question of probable cause to the jury rather than simply determining that Deborah had probable cause to set in motion the criminal proceedings.

Although the Ostafis' counsel had argued there was no evidence of Deborah lacking probable cause, the discussion about the **contents** of the malicious prosecution instruction around the cited recording time concerned other matters – such as language about whether Deborah's motive was "to coerce the

collection of money from the Defendant [Gary] for her trees" or whether the instruction listed all allegations made by Deborah in the criminal complaint she signed. The Ostafis did not specifically object to any particular language in the instruction in regard to probable cause from our review of the cited recording. In sum, the Ostafis have failed to show how they properly preserved any alleged error in the contents of the trial court's jury instruction on malicious prosecution regarding probable cause or lack thereof.[6]

While perhaps the Ostafis effectively did preserve the issue of whether the trial court should submit questions of probable cause to the jury in jury instructions, we conclude that the trial court did not abuse its discretion in submitting the issue to the jury as the evidence presented created a factual issue for the jury to resolve as we explain below.

## No Reversible Error in Denying Motions for Directed Verdict and for Judgment Notwithstanding the Verdict (JNOV)

Elements of a malicious prosecution claim are: 1) initiation, continuation, or procurement of a judicial proceeding, 2) without probable cause, 3) with malice, meaning "seeking to achieve a purpose other than bringing an

---

[6] While perhaps the Ostafis more specifically argued how to address questions of probable cause in the malicious prosecution instruction at some other point, this Court should not have to search the record – here including recordings of a three-day trial and of hearings on other dates in addition to eleven bound volumes of written record – to see where the issue is properly preserved. *See, e.g.*, *Porter v. Allen*, 611 S.W.3d 290, 293 (Ky. App. 2020).

-18-

offender to justice" in the criminal context, 4) termination of the proceeding in favor of the person it was brought against, and 5) damages suffered as a result. *Seiller Waterman, LLC v. RLB Properties, Ltd.*, 610 S.W.3d 188, 196 (Ky. 2020) (quoting *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016)).

The Ostafis claim that the evidence does not support the jury's finding of malicious prosecution of Gary by Deborah and that the trial court "erred in presenting the issue of probable cause to the jury." It is not entirely clear whether they simply allege error in the jury instructions (which we reject above), or whether they simply mean to argue that the trial court erred in submitting the question of probable cause to the jury and not directing a verdict in Deborah's favor on the malicious prosecution claim. They also challenge the trial court's denial of their post-trial motion for a JNOV.

A ruling on a motion for a JNOV is subject to the same standard of review as a ruling on a motion for a directed verdict. It is difficult to prevail on an appeal of a trial court's denial of a motion for a directed verdict or a JNOV. The appellate court must not disturb the trial court's decision to deny a directed verdict or a JNOV unless its decision is clearly erroneous. *Estate of Moloney v. Becker*, 398 S.W.3d 459, 461 (Ky. App. 2013).

In ruling on a motion for a directed verdict or a JNOV, the trial court must "consider the evidence in the strongest possible light in favor of the party

opposing the motion" and "give the opposing party the advantage of every fair and reasonable inference which can be drawn from the evidence." *Id.* (quoting *Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky. App. 1985)). So, it cannot grant a directed verdict or JNOV "unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable [persons] could differ."

Given the very limited circumstances in which a trial court may properly grant a directed verdict or JNOV and the very deferential standard of review for such rulings, an appellate court should not reverse the denial of a directed verdict or a JNOV unless "it is shown that the verdict was palpably or flagrantly against the evidence such that it indicates the jury reached the verdict as a result of passion or prejudice." *Becker*, 398 S.W.3d at 461 (quoting *Peters v. Wooten*, 297 S.W.3d 55, 65 (Ky. App. 2009)).

Keeping in mind the trial court's duty to assess the evidence in the light most favorable to Gary and the evidence presented at trial, we cannot say that the trial court clearly erred in not finding either a complete absence of proof on a material issue or a lack of factual dispute on a material issue in regard to the malicious prosecution claim – particularly on probable cause or malice. Although there may not have been affirmative evidence of Deborah falsely telling the authorities she directly witnessed Gary committing any offense, Deborah

indisputably signed a criminal complaint against Gary which affirmatively alleged he committed criminal acts.[7]  And the sheriff testified to Deborah not telling him that the removed trees had been on the Gabbards' property despite Deborah admitting in her testimony that she had found out some trees were on the Gabbards' property after planting the trees.  Further, the testimony of all parties indicated some mutual animosity or suspicion in their dealings.

Construing the evidence and all reasonable inferences therefrom in Gary's favor, there was sufficient evidence to support findings that Deborah acted without probable cause and with malice.  We are aware that malice must be demonstrated by independent evidence rather than just simply being inferred from lack of probable cause.  *Seiller Waterman*, 610 S.W.3d at 200.  Yet, construing the evidence and inferences in Gary's favor, the jury's finding that Deborah acted for revenge or for a purpose other than just seeking justice – specifically, using criminal proceedings to get Gary to pay for her trees or survey fees – is supported by substantial evidence and not clearly erroneous.  We discern no reversible error in the trial court's denying the Ostafis' directed verdict motion despite their claims of insufficient evidence of malice.

---

[7] Despite the Gabbards' claim in their brief that the criminal complaint signed by Deborah says she saw Gary commit the complained-of actions, the criminal complaint does not explicitly say that she saw or otherwise witnessed Gary doing such actions.  Instead, she simply avers that Gary committed the actions.  Whether Deborah had sufficient information to have probable cause to believe that Gary committed the actions was a key issue in dispute which the trial court properly submitted to the jury via its malicious prosecution instruction.

Furthermore, given our review of the evidence presented at trial, we cannot say that the verdict was "palpably or flagrantly against the evidence" or indicates that the jury reached its verdict as a result of passion or prejudice. In sum, there was no clear error in the trial court's decision to deny the Ostafis' requested relief for a directed verdict and for a JNOV.

**No Reversible Error in Denying Motion for New Trial**

The Ostafis argue that the trial court erred in denying their motion for a new trial. They argue the judgment on the jury verdict is not supported by the evidence and contrary to law.

We cannot disturb the trial court's denial of the motion for a new trial "absent a manifest error or abuse of discretion." *Gould*, 929 S.W.3d at 741. As discussed earlier, the Ostafis have failed to demonstrate reversible error in regard to the sufficiency of the evidence or in the trial court's application of the law. Thus, from our review of the record before us, we discern no manifest injustice or abuse of discretion in the trial court's denial of their motion for a new trial.

**No Reversible Error in Trial Court's Order Granting in Part Motion for More Specific Findings**

The Ostafis argue that the trial court's order granting in part their request for more specific factual findings under CR 52.02 is "clearly erroneous." They requested more specific findings regarding why the trial court denied a directed verdict on malicious prosecution, and argued that Gary failed to prove that

Deborah lacked probable cause and acted with malice. They contend that the findings rendered by the trial court in this order are not specific enough to allow meaningful appellate review. We disagree.

The trial court's order noted that the Ostafis argued that Gary failed to prove that Deborah lacked probable cause when she signed her affidavit for the criminal complaint against him. And it noted that the Gabbards argued that Deborah lacked probable cause because she testified to never seeing Gary remove her trees, poison her trees, or remove survey markers. It also noted Deborah's argument that she relied on the advice of the County Attorney when signing the affidavit,[8] but nonetheless concluded that a directed verdict based on probable cause was not appropriate considering the testimony of Deborah, the Gabbards, and the County Attorney, and other evidence admitted at trial – which would implicitly include the criminal complaint signed by Deborah.

The trial court also specifically concluded that a directed verdict based on lack of termination of proceedings in Gary's favor was not appropriate as "[t]he District Court signed an order dismissing the charges against him." The Ostafis argue that the dismissal was not really a dismissal on the merits finding Gary not guilty of the charges.

---

[8] In response to Deborah's arguments that she relied on advice of counsel, the Gabbards pointed out to the trial court that the County Attorney was not counsel for Deborah.

The motion to dismiss indicated the Commonwealth's and Gary's agreement to treat the survey marker removal matter as a misdemeanor rather than a felony, as well as Gary's request to dismiss the criminal case entirely. The district court granted the motion to dismiss, simply stating that the case is civil and not criminal. In essence, it was a determination in Gary's favor on the criminal charges – despite leaving open the possibility of the Ostafis' recovery in a civil context.[9] Thus, it was a determination in Gary's favor for purposes of the malicious prosecution claim here – which related to Deborah's participation in bringing about criminal charges, NOT a civil lawsuit.

Despite the Ostafis' arguments to the contrary, we believe the trial court's factual findings are sufficient to permit meaningful appellate review. Despite the Ostafis' arguments that probable cause was definitively established, the trial court indicated that some evidence on the matter appeared to be conflicting – a finding which we cannot say is clearly erroneous from our review of the evidence. In sum, we discern no reversible error in the trial court's order granting in part the Ostafis' motion for more specific factual findings.

---

[9] In the past, litigants sometimes alleged claims of "malicious prosecution" for the wrongful institution of a civil action which would more accurately be referred to as claims for "wrongful use of civil proceedings." *See, e.g.*, *Prewitt v. Sexton*, 777 S.W.2d 891, 894 (Ky. 1989) (distinguishing torts of malicious prosecution for wrongfully bringing about criminal proceedings and wrongful use of civil proceedings for filing civil suits for improper purposes). Here, Gary clearly claimed malicious prosecution by Deborah regarding a criminal proceeding and did not allege a claim for wrongful use of civil proceedings.

**No Reversible Error in Denial of Motion to Alter, Amend or Vacate**

The Ostafis argue that the trial court's judgment was based on manifest errors of law such as improperly allowing the jury to decide probable cause and thus, that the trial court erred in denying their motion to alter, amend, or vacate.

We review the trial court's ruling on the motion to alter, amend or vacate for abuse of discretion. *Ipock v. Ipock*, 403 S.W.3d 580, 583 (Ky. App. 2013). Again, we disagree with the Ostafis' arguments about alleged errors in the trial court's application of the law. And we discern no abuse of discretion in its denial of their motion to alter, amend or vacate from our review of the record and the applicable law.

**The Trial Court's Award of Costs Need Not be Disturbed**

The last portion of the Ostafis' argument addresses the trial court's award of costs to the Gabbards, simply stating in its entirety: "Should this Court reverse the Trial Court's Amended Trial Order and Judgment, the Trial Court's award of costs to Appellees should also be vacated."

The Ostafis did not cite any legal authority or substantively argue in their briefs that the trial court erred in awarding costs to the Gabbards. We do not construe their brief discussion of the award of costs in their appellants' brief to specifically allege an error in the award of costs. Instead, this discussion appears

-25-

to be simply part of their request for relief – *i.e.*, they request that the award of costs also be vacated in addition to their requests for the judgment to be reversed and remanded with directions for a retrial.  Despite the Gabbards' citation of authority to support the trial court's award of costs to them in their appellees' brief, the Ostafis do not further address the issue of the award of costs in their reply brief.

As we discern no reason to otherwise disturb the trial court's judgment, we need not address nor disturb its award of costs to the Gabbards.  Any further issues raised in the parties' briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## **CONCLUSION**

For the foregoing reasons, the judgment of the Gallatin Circuit Court is hereby **AFFIRMED.**

ALL CONCUR.

BRIEFS FOR APPELLANT:

Grant M. Axon
Warsaw, Kentucky

BRIEF FOR APPELLEE:

Ruth H. Baxter
Carrollton, Kentucky